UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **SHAHID BALOCH,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | **CIVIL ACTION NO.** |
| | § | |
| **ENVISION HEALTHCARE CORP.** | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, Shahid Baloch, complaining of Defendant, Envision Healthcare Corporation, and for cause of action would show the Court as follows:

### I.

### PARTIES

1. Plaintiff Shahid Baloch ("Baloch" or "Plaintiff") is an individual who resides in Coppell, Dallas County, Texas.

2. Defendant Envision Healthcare Corporation ("Envision" or "Defendant") is a corporation organized under the laws of the Delaware with its principal office in Nashville, Tennessee. Envision may be served with process through its registered agent for service of process, Corporation Service Company, d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

### II.

### JURISDICTION

3. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331.

## III.

## VENUE

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Dallas County, Texas.

## IV.

## EXHUSTION OF ADMINSTRATIVE REMEDIES

5. Plaintiff fully exhausted his administrative remedies and has fulfilled all jurisdictional prerequisites to the filing of his claims.  Plaintiff filed an employment discrimination charge against Defendant with the EEOC on October 13, 2020, the EEOC issued a Notice of Right to Sue on May 3, 2021.  Plaintiff filed this pleading within 90 days from his receipt of such notice.

## V.

## FACTS

6. Baloch is a fifty-seven-year-old Pakistani male.

7. Baloch was hired by Dr. Leonard Riggs and Bill Miller to start EmCare's revenue accounts receivable ("AR") department over twenty-two years ago.   Baloch performed his job at the highest levels with only minimal supervision.  Under Baloch's leadership the AR department was responsible for billing and collecting $100 million dollars of subsidy per month from Envision's clients. The AR department never went over sixty days in outstanding balances owed.  Baloch served as the sole Accounting Manager running the revenue AR department.

8. During the merger with AMSURG, Baloch was assigned by the CFO to consolidate the AR departments for all companies in Dallas. Baloch successfully merged three separate AR departments in July of 2019 and was congratulated by Envision's Regional CEOs and COOs. Baloch also served as part of the integration team when the company upgraded from the platinum sequel platform to the Oracle platform. Baloch was awarded a bonus for the successful completion of this two-year project. In over twenty-two years, Baloch received only positive reviews and was never disciplined for performance issues. Baloch loved his job and was always excited to take on new challenges or projects to aid in the successful growth of the company.

9. Although, Baloch held the title of Accounting Manager his job duties far exceeded the job duties of the other two Accounting Managers and the four Senior Accounting Managers in place at the time of his termination. These other individuals managed only a set number of contracts, were responsible for general revenue entries, and managed only one or two employees. In stark contrast to Baloch who managed $100 million dollars in monthly revenue and a staff of six to eight. These other individuals were all Caucasian and significantly younger than Baloch.

10. Prior to 2018, Baloch reported to Kenny Coupel who served as a Controller and later Vice President of Finance. During the mergers of EmCare, Sheridan and AMSURG, Envision separated the accounting and finance departments and placed Revenue AR under accounting. Baloch was assigned to report to Senior Director of Accounting Yahira Gomez ("Gomez").

11. When Gomez left the company in mid-2018, Vice President of Revenue, Kory Harvey ("Harvey"), a Caucasian male in his forties, contacted Baloch to warn him that Gomez was

leaving. Harvey told Baloch, "Gomez is leaving, and you will be reporting to me." He further asked Baloch to prepare a plan for consolidating the AR departments together under Baloch's supervision, including what resources, staffing and equipment you will need to manage that new department.

12. Towards the end of 2018 Baloch met with Harvey in person in Fort Lauderdale to discuss, Baloch's consolidation plan and required staffing. Harvey reminded Baloch that once the AR departments were consolidated his workload would double or even triple and told Baloch, "don't be bashful, ask for anything you want."

13. Baloch told Harvey he should be promoted to a director level to bring his position in line with the new duties he would assume when he consolidated the AR departments into his own. Baloch explained that given the increased, role and responsibility, he should be elevated to the director title and his direct reports should be elevated one level. Baloch further requested a raise to $160,000 and to receive the standard bonus awarded to director level employees. Harvey was supportive of Baloch's plan and promised "we will take care of this."

14. Baloch's suggested plan paralleled Envisions' plans for the revenue accounting department. After the mergers were complete, Envision hired Lisa Parrish ("Parrish"), a Caucasian female in her forties, to serve as the director of revenue accounting. Envision further hired Lauren Todd, a Caucasian female in her thirties, to serve as Senior Accounting Manager.

15. After that meeting, Baloch did not hear from Harvey regarding his request for a couple of months and Baloch followed up on multiple occasions. In late March of 2019, Harvey told Baloch that "once the consolidation is completed, I will come through for you." The

consolidation was completed in July of 2019.  Baloch followed up with Harvey a few times and Harvey avoided him.

16. Finally, in late August, Harvey informed Baloch that he would no longer be reporting to him but would instead begin reporting to Controller Andy Garlington ("Garlington"), a Caucasian male in his forties, who is one of Harvey's direct reports. Harvey explained that he was passing some of his responsibilities to Garlington.  Baloch asked Harvey what about your promise to promote me to the director role to bring my title in-line with my responsibilities.  Harvey promised that he would get Garlington "up to speed" on all of the things they had discussed.

17. Baloch immediately sent Garlington an e-mail introducing himself and requested a meeting.  Garlington responded and told Baloch that he had heard great things about him and had a lengthy conversation with Harvey.  He further told Baloch that he was planning a trip to Dallas to meet Baloch and his team.

18. In mid- November 2019, Garlington came to Dallas and met with Baloch and his team. During that visit, Baloch again explained to Garlington that he felt his position should be elevated to Director to align the position with Baloch's actual responsibilities.  Baloch also told Garlington that he had been waiting on Harvey and that he felt like he had not received a straight answer.  Garlington explained that he could not make the decision but promised to take Baloch's request to Senior Vice President and Chief Accounting Officer Kenneth Zongor.   Garlington further promised to report back and to provide an honest and transparent answer.

19. In that same meeting, Garlington asked Baloch how he would feel about reporting to Baloch's counter-part Lisa Parrish going forward.  Baloch told Garlington, I don't have a

problem reporting to Parrish, the only problem is that I see Parrish as my counterpart, and I am requesting a promotion. "I don't understand how that would work going forward." Garlington answered, "understood." Garlington promised to report back to Baloch in December or January, but he did not report back until February of 2020. Baloch sent Garlington two or three emails following up on his requested promotion.

20. In February 2020, Garlington and Parrish visited Dallas. Garlington told Baloch that he had detailed discussions with Harvey and Zonger, but they feel comfortable with where you are money wise and title wise. Baloch said that is very disappointing because I was promised this promotion. Garlington responded, "I did not promise you anything." Garlington told Baloch several times, "I am just the messenger this decision was made by Zonger." Garlington further promised that they would revisit this request in six months after things have settled down from the consolidation.

21. Then Garlington told Baloch that he would begin reporting to Parrish moving forward. Baloch complained to Garlington that he thought this was an "unfair decision" since he and Parrish were at the same level. Garlington said, "that is our decision right now, but you are welcome to reach out to me anytime you like."

22. Baloch further complained to his former boss and executive team member, Coupel, Regional CEO and Head of Surgery Mattis Adams, and Chief Medical officer over Surgery Matthew Carrick about Envision's failure to provide the promised promotion and improperly assigning him to report to Parrish.

23. On April 9, 2020, Harvey told Baloch he was being furloughed because of Covid-19 and assured Baloch that the furlough had nothing to do with performance. Baloch asked

Harvey if cost-cutting measures were necessary why they did not let go of the temporary workers in his department instead.

24. Beginning in June of 2020, Envision began bringing employees back from furlough. However, Envision informed Baloch that he was selected for lay-off July 21, 2020. Again, Harvey assured Baloch that his lay-off was related to Covid-19 and not performance. Baloch was also informed by Director of Employee Relations Lisa Gentry that he was the only employee laid off in his business unit.

25. Upon information and belief, none of Baloch's accounting counterparts were selected for lay-off. This is despite the fact that the accounting department has struggled across the board to meet performance expectations following the merger.

26. After twenty-two years of dedicated service and stellar performance, Baloch was shocked by his selection for lay-off. Upon information and belief, Envision eventually did replace Baloch by filling his position. Baloch believes that he was selected for lay-off for discriminatory reasons and the real reason he was selected for lay-off was because of his age, race and multiple complaints about the company's failure to promote him.

27. Upon information and belief, Defendant employed more than one thousand employees at all relevant times.

## VI.

## CAUSES OF ACTION

### Count One:  Title VII, Texas Commission on Human Rights Act, TEX. LAB. CODE § 21.051 and 42 U.S.C. §1981 Race and National Origin Discrimination

28. Baloch incorporates by reference the foregoing, inclusive, as if those allegations were set forth verbatim.

29. At all times material to this action Defendant was an "employer" as defined by 42 USC §§ 1981 and 2000 b and Tex. Lab. Code § 21.002(8)(D). Defendant is therefore subject to the provisions of 42 USC § 1981, the TCHR and Title VII.

30. Plaintiff was qualified for his position as demonstrated by his extensive experience, tenure with the company, performance reviews and the fact that Envision trusted Baloch to manage the consolidation of multiple AR departments.

31. Defendant failed to promote Baloch to the Director level despite the fact that Baloch was performing director level work and Baloch's less qualified and less preforming Caucasian counterparts were awarded the Director title and pay. Baloch asserts that Defendant failed to promote him because of his race and national origin.

32. Defendant included Baloch in the furlough which was an adverse employment action. Defendant took such adverse employment action because of Baloch's race and national origin.

33. By terminating Baloch, Defendant took an adverse action against him. Defendant took such adverse action because of Plaintiff's race and national origin.

34. Through Defendant's supervisors, and/or employees, in a continuing course of conduct, Baloch was subjected to negative treatment, was not promoted and was terminated because of his race and national origin.

35. Defendant's actions, as described herein, constitute unlawful discrimination on the basis of Baloch's race and national origin, in violation of Title VII, 42 U.S.C. § 1981 and Tex. Lab. Code § 21.051.

36. As a result of the unlawful discriminatory actions of Defendant as described above, Baloch has suffered, and will continue to suffer, actual damages in the form of lost wages and lost employment benefits both past and future.

37. As a further result of Defendant's actions, Baloch has also suffered non-pecuniary losses, including but not limited to emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.  Baloch is therefore entitled to compensatory damages.

38. Defendant's actions were done with malice and/or with reckless indifference to Baloch's statutorily protected rights.  Baloch is therefore entitled to punitive damages.

39. Baloch also seeks attorney's fees and costs of suit.

### Count Two – Title VII, Texas Commission on Human Rights Act
### TEX. LAB. CODE § 21.055 and 42 U.S.C. §1981 Retaliation

40. Baloch incorporates by reference paragraphs 6-27, as if those allegations were set forth verbatim.

41. At all times material to this action Defendant was an "employer" as defined by 42 USC §§ 1981 and 2000 b and TEX. LAB. CODE § 21.002(8)(D). Defendant is therefore subject to the provisions of 42 USC § 1981, the TCHR and Title VII.

42. Plaintiff was qualified for his position as demonstrated by his extensive experience, tenure with the company, performance reviews and the fact that Envision trusted Baloch to manage the consolidation of multiple AR departments.

43. Plaintiff engaged in protected conduct when he complained to Harvey, Garlington, Coupel, Adams, and Carrick regarding Defendant's failure to promote him and choice to include him in the furlough.

44. Defendant failed to promote Baloch to the Director level despite the fact that Baloch was performing director level work and Baloch's less qualified and less preforming Caucasian

counterparts were awarded the Director title and pay. Baloch asserts that Defendant failed to promote him because of his protected conduct.

45. Defendant included Baloch in the furlough which was an adverse employment action. Defendant took such adverse employment action because of Baloch's protected conduct.

46. By terminating Baloch, Defendant took an adverse action against him. Defendant took such adverse action because of his protected conduct.

47. Under Title VII, the TCHRA and 42 U.S.C. § 1981, it is unlawful for an employer to retaliate against any individual because he opposed any practice made unlawful by the statute. TITLE VII, TEX. LAB. CODE § 21.055 and 42 U.S.C. § 1981. By terminating Baloch in response to his opposition to race and national discrimination, Defendant engaged in unlawful retaliation in violation of Title VII, the TEX. LAB. CODE § 21.055 and 42 U.S.C. § 1981.

48. As a result of the unlawful retaliatory actions of Defendant as described above, Baloch has suffered, and will continue to suffer, actual damages in the form of lost wages and lost employment benefits both past and future.

49. As a further result of Defendant's actions, Baloch also suffered non-pecuniary losses, including but not limited to emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. Baloch is therefore entitled to compensatory damages.

50. Defendant's actions were done with malice and/or with reckless indifference to Baloch's statutorily protected rights. Baloch is therefore entitled to punitive damages.

51. Baloch also seeks attorney's fees and costs of suit.

## Count Three--Age Discrimination in Employment Act

52. Plaintiff incorporates by reference paragraphs 6-27, as though fully set forth herein.

53. At all times material to this action Defendant was an "employer" as defined by the Age Discrimination in Employment Act. Defendant is therefore subject to the provision of that act.

54. Plaintiff was qualified for his position as evidenced by his extensive experience, tenure with the company, performance reviews and the fact that Envision trusted Baloch to manage the consolidation of multiple AR departments.

55. Defendant failed to promote Baloch to the Director level despite the fact that Baloch was performing director level work and Baloch's less qualified and less preforming Caucasian counterparts were awarded the Director title and pay. Baloch asserts that Defendant failed to promote him because of his age.

56. Defendant included Baloch in the furlough which was an adverse employment action. Defendant took such adverse employment action because of Baloch's age.

57. By terminating Plaintiff, Defendant took an adverse action against him. Defendant took such adverse action because of Plaintiff's age.

58. Through Defendants' supervisors, and/or employees, in a continuing course of conduct, Plaintiff was subjected to negative treatment and was terminated because of his age.

59. Defendants' actions, as described herein, constitute unlawful discrimination on the basis of Plaintiff's age, in violation of the ADEA.

## Count Four– ADEA Retaliation

60. Plaintiff incorporates by reference paragraphs 6-27, as though fully set forth herein.

61. At all times material to this action Defendant was an "employer" as defined by the Age Discrimination in Employment Act. Defendant is therefore subject to the provisions of the Act.

62. Plaintiff was qualified for his position as evidenced by his extensive experience, tenure with the company, performance reviews and the fact that Envision trusted Baloch to manage the consolidation of multiple AR departments.

63. Plaintiff engaged in protected conduct when he complained to Harvey, Garlington, Coupel, Adams, and Carrick regarding Defendant's failure to promote him and choice to include him in the furlough.

64. Defendant failed to promote Baloch to the Director level despite the fact that Baloch was performing director level work and Baloch's less qualified and less preforming Caucasian counterparts were awarded the Director title and pay. Baloch asserts that Defendant failed to promote him because of his protected conduct.

65. Defendant included Baloch in the furlough which was an adverse employment action. Defendant took such adverse employment action because of Baloch's protected conduct.

66. By terminating Plaintiff, Defendant took an adverse action against him. Defendant took such adverse action because of his protected conduct.

67. Under the ADEA, it is unlawful for an employer to retaliate against any individual because he has opposed any practice made unlawful by the statute. By terminating Plaintiff in response to his opposition to age discrimination, Defendant engaged in unlawful retaliation in violation of the ADEA.

## VII.

## **PRAYER**

68. Plaintiff respectfully requests that this Court grant the following relief from Defendant:

    A. A declaratory judgment, declaring Defendant's past practices herein complained of to be unlawful;

B. Back pay, front pay, pension benefits, stock options, bonuses, health benefits, and any other relief necessary to compensate Plaintiff;

C. Punitive and Liquidated damages;

D. Prejudgment and post-judgment interest;

E. Attorney's fees necessary for prosecution of Plaintiff's claims;

F. Costs for the prosecution of Plaintiff's claims, including the costs of expert witness fees; and

G. Such other general relief to which Plaintiff shows himself justly entitled.

## VIII.

## JURY DEMAND

69. Plaintiff requests that all ultimate fact issues be submitted to a jury for determination. He has paid the jury fee.

Respectfully Submitted,

_____
Jane Legler
Texas Bar No. 03565820
Christine Neill
Texas Bar No. 00796793
Kyla Gail Cole
Texas Bar No. 24033113

Neill Legler Cole PLLC
3141 Hood Street, Ste. 200
Dallas, Texas 75219
(214) 748-7777
(214) 748-7778 (facsimiles)
christine@nlcemployeelaw.com
jane@nlcemployeelaw.com
kyla@nlcemployeelaw.com